UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) K.S. b/n/f ANDREA GEORGE-JARRARD, ) TRICIA STAHL, MEGAN DEAN, ) T.H. b/n/f MARK ANTHONY HENRY, and ) DUSTIN LUALLEN, ) ) Defendants. ) | 4:09-cv-34-WGH-RLY |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**I.    Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge,[1] on Plaintiff's Motion for Summary Judgment filed February 11, 2010. (Docket Nos. 60-63). Defendant K.S. b/n/f/ Andrea George-Jarrard ("K.S.") filed a Response on March 29, 2010.[2] (Docket Nos. 66-68). Defendant K.S. then filed a Cross Motion for Summary Judgment on March 30,

---

[1] On June 15, 2009, the parties consented to Magistrate Judge jurisdiction in this case. (Docket No. 37, Section VII). Chief Judge Richard L. Young entered an Order of Reference on June 3, 2010. (Docket No. 78).

[2] Defendant T.H. b/n/f Mark Anthony Henry ("T.H.") has been served. (Docket Nos. 47-48). T.H. has never entered an appearance, nor did she respond to plaintiff's Motion for Summary Judgment. Plaintiff has also never moved to default her. Plaintiff is hereby **ORDERED** to file a stipulation of dismissal or motion for entry of default with respect to T.H. within fifteen (15) days of the date of this order.

2010.  (Docket Nos. 69-71).  On April 26, 2010, Plaintiff filed a Response to Defendant K.S.'s Cross Motion for Summary Judgment and Reply Brief in Support of Its Motion for Summary Judgment.  (Docket No. 74).  Defendant K.S. filed a Reply in Support of Cross Motion for Summary Judgment on May 10, 2010.  (Docket No. 77).

**II.   Background**

The facts in the light most favorable to the non-moving party are as follows.

On July 13, 2007, defendant Dustin Luallen ("Luallen") was insured through an auto owner's insurance policy with plaintiff, Progressive Casualty Insurance Company ("Progressive"), with a Bodily Injury Liability limit of $50,000 each person/$100,000 each accident.  (*See* Affidavit of Todd Oldson; Auto Insurance Coverage Summary ("Policy")).  The Policy provided:  "If you pay the premium for this coverage, we will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident."  (Policy at 3).  Furthermore, the Policy defined an insured person as "[y]ou or a relative with respect to an accident arising out of the ownership, maintenance, or use of an auto or trailer. . . ."  (*Id.*).  However, the Policy also included certain exclusions, including the following:

> Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:
> \* \* \* \* \*
> 17.   **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person.**  This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a

>     crime.  For purposes of this exclusion, criminal acts or
>     omissions do not include traffic violations.

(Policy at 6; Auto Policy Endorsement at 1).

On July 13, 2007, 15-year-old K.S.[3] was a passenger in a 1990 Mazda MPV (the "van") with her friends – Patricia Stahl, Megan Dean, and T.H.  The girls were on their way to the mall in Bloomington, Indiana, to buy a birthday present for a mutual friend.  (Deposition of K.S. ("K.S. Dep.") at 15-16).

On this same day, Luallen was traveling with three friends on their way to the Owen County Fairgrounds in Spencer, Indiana, to watch a flat track four-wheeler race.  (Deposition of Dustin Luallen ("Luallen Dep.") at 10-11).  They were traveling in a truck owned and driven by Jeff Tillett ("Tillett"), and Luallen was in the back seat on the passenger's side.  (*Id.* at 11).  Following behind Tillett's truck were two other vehicles accompanying Tillett to the Fairgrounds for the race.  (*Id.* at 11-13).

The three vehicles met in the K-Mart parking lot in Bedford, Indiana, and traveled on Highway 37 North towards Highway 46 to Spencer, Indiana.  (Luallen Dep. at 13-15).  As they entered Bloomington, one of the friends in another vehicle phoned Tillett, who was driving his truck, to tell him to watch a van that

---

[3]The court is aware that the briefing on these motions refer to K.S. and T.H. by their full names and indicate that they are no longer minors.  However, it does not appear that any party has filed a formal motion informing the court that these two girls are no longer minors.  In an abundance of caution, the court elects to refer to the girls by their initials.

- 3 -

had pulled in front of one of the other trucks in the caravan. (*Id.* at 15-16). Luallen was then informed about the van. (*Id.* at 16-17).

When Luallen saw the van coming up beside Tillett's truck, he noticed a couple of girls. (Luallen Dep. at 18). Tillett's truck was *in motion* and traveling in the left-hand lane, and the van was in the right-hand lane. (*Id.* at 17). Luallen then decided to stand up in the backseat of the truck and "moon" the girls. (*Id.*)

When the cars reached the Third Street exit, and while both were moving, the girls saw Luallen "mooning" them through the back window of Tillett's truck. (K.S. Dep. at 17-21). The van then immediately veered off the exit ramp and flipped. (*Id.* at 20-22). K.S. was thrown out an open window and was pinned underneath the vehicle. (*Id.* at 23-24).

After the accident, K.S. filed suit against Luallen in Indiana state court seeking compensatory damages. Plaintiff Progressive filed this declaratory judgment action seeking a declaration that there was no coverage under Luallen's insurance policy and that Progressive did not owe Luallen a duty to defend against any claims arising out of the accident.

Progressive filed its Motion for Summary Judgment arguing that Luallen's actions did not arise out of the ownership, maintenance, or use of the vehicle he was riding in at the time of the accident. Progressive also argues that the criminal acts exclusion within the policy excludes coverage for this accident because Luallen's "mooning" constituted a criminal act. In Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary

Judgment, defendant K.S. argues that Luallen's actions did arise out of the ownership, maintenance, or use of the vehicle, and that the criminal acts exclusion is void as it violates public policy. Having examined the arguments of the parties, the court now **GRANTS, in part,** and **DENIES, in part,** the Cross Motions for Summary Judgment.

### III.     Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999).

Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

### IV.     Analysis

The parties raise two issues in their cross motions for summary judgment.[4] First, the court must determine whether or not Luallen's actions arose out of the "ownership, maintenance or use of an auto." Second, we must determine if the exclusion in Luallen's automobile insurance policy that denies coverage for bodily injury caused by a criminal act is applicable.

####     A.     Application of State Substantive Law

This is a suit brought pursuant to the court's diversity jurisdiction.[5] While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits. *First Nat. Bank and Trust Corp. v. American Eurocopter Corp.,* 378 F.3d 682, 689 (7th Cir. 2004). This court must, therefore, apply Indiana substantive law. The most complete

---

[4]Progressive also argues that they do not owe coverage because Luallen's actions were not the proximate cause of defendant K.S.'s injuries. However, in ruling that the accident arose out of the use of an automobile, we make no determination regarding whether or not Luallen's actions were the proximate cause of defendant K.S.'s injuries. Proximate cause is an issue of fact for the jury to decide in the tort action currently proceeding in Indiana state court. Whether or not Luallen's actions were the proximate cause of defendant K.S.'s injuries is disputed and cannot be resolved in this motion.

[5]In the Amended Complaint, Progressive alleges that it is a corporation organized and existing in Ohio; the defendants are all Indiana residents, and the amount potentially payable under the policy to those injured could be as much as $100,000.

and succinct explanation of Indiana law covering the interpretation of insurance contracts is from *Erie Ins. Co. v. Adams,* which states:

> The interpretation of an insurance contract is a question of law for the court. And, language in an insurance contract which is clear and unambiguous should be given its plain and ordinary meaning. Indiana courts have repeatedly noted that insurers are free to limit liability "in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is ordinarily entitled to construction and enforcement." However, exceptions, limitations and exclusions must be plainly expressed in the policy. The exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play, and any doubts as to the coverage shall be construed against the contract drafter.

*Erie Ins. Co. v. Adams,* 674 N.E.2d 1039, 1041 (Ind. Ct. App. 1997)(citations omitted).

### B.     Did the accident "arise out of the . . . use of an auto?"

Progressive asserts that Luallen's auto policy does not cover the injuries to K.S. (or possible claims of defendant T.H.) because Luallen's conduct did not "arise out of the ownership, maintenance or use" of the vehicle in which he was a passenger.

The seminal case of *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 291 N.E.2d 897 (Ind. Ct. App. 1973), involved an injury to a deliveryman transporting a water softener to a customer's home. After the deliveryman unloaded the water softener from the delivery truck, he was injured when the customer's negligently maintained basement stairs collapsed beneath him. The court held that the accident did not "arise out of the use of the truck." As the

trial court pointed out, "the proximate cause of the accident was the negligent maintenance of the staircase . . . ." The Indiana Supreme Court there stated:

> We are of the opinion that what was intended by the words in the contract, "arising out of the ownership, maintenance or use" of the truck as applied to unnamed insureds *is synonymous to being caused by use of the truck* (including the loading and unloading). Otherwise the insurance company becomes the insurer for every sort of accident by anyone to whom a delivery is made. We are in agreement with the trial court that the "efficient and predominating cause" of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered.

*Indiana Lumbermens,* 291 N.E.2d at 899 (emphasis added).

A more recent Indiana case, *Moons v. Keith,* 758 N.E.2d 960 (Ind. Ct. App. 2001), addressed this same language under the following circumstances. Insured Randy Williams and passengers were stopped at a stoplight in Gary, Indiana. While stopped at the intersection, an uninsured vehicle driven by Calvin Keith turned around and positioned his car in the intersection beside Williams' vehicle. Keith rolled the window down and began firing shots from his pistol into Williams' vehicle. Williams' vehicle was blocked by another stopped car, and thus Williams was unable to drive away. Keith fired 17 shots into the car, injuring the occupants. The two cars did not come into contact during the incident. *Moons,* 758 N.E.2d at 961.

Williams' car was insured by State Farm and contained an uninsured benefits provision which provided that the policy would pay damages for bodily injury from an uninsured motor vehicle. However, the bodily injury must be caused by an accident arising "out of the operation, maintenance or use of an

Case 4:09-cv-00034-WGH-RLY   Document 80   Filed 08/02/10   Page 9 of 15 PageID #: 582

uninsured motor vehicle."  After reviewing other states' case law and the *Indiana Lumbermens* case, the *Moons* court concluded that in order to find coverage, "there must be a causal connection or relationship between the vehicle and the injury."  *Id.* at 963.  In the *Moons* case, the court concluded that there was not a causal relationship between the vehicles because the only evidence indicated that the Keith vehicle was merely used to transport Keith to the scene.  The court found that Keith did not chase Moons and Williams in his car.  The shooting was not the result of road rage.  The cars did not touch.  The court stated, "We are not saying that the facts here could not present a different picture, but based on what was designated, we cannot speculate as to what precipitated this incident.  Had a more specific tie between the vehicle and the injuries been shown, then the vehicle might have been more than the mere situs."  *Id.* at 964.

  The *Moons* court went on to state:

> Moreover, although a causal connection must exist between the vehicle and the injury, the relationship between the two must not be too remote:
>> It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence.  The word "coverage" as used in automobile liability policy means the sum of risks which the policy covers.  Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injuries sustained.  Rather, the courts have only required that some form of *causal relationship exist between the insured vehicle and the accident.*  However, liability does not extend to results distinctly remote, though within the line of causation.

*Moons,* 758 N.E.2d at 964 (*citing* to 6B John Alan Appleman & Jean Appleman, INSURANCE LAW & PRACTICE, § 4317 (Buckley ed. 1979)(emphasis added).

- 9 -

Addressing the facts of this case, there are several distinct factual differences in the case before this court and the facts found in the *Indiana Lumbermens* and *Moons* cases. Specifically, in this case, the vehicle in which Luallen was in and the K.S. van were both *in motion* during the entire time of the incident in question. The Tillett truck was one in a caravan of three vehicles which was approached by the moving van. Without the fact that the Tillett truck was in motion transporting its occupants, the incident in question would not have occurred. The vehicle was something more than "a stationary platform" used by Luallen. This is not a case in which the injury occurred after Luallen's vehicle had stopped and been unloaded for purposes of "mooning" another traveling vehicle.

In this case, Luallen was engaged in an activity while his vehicle was moving and was transporting him from one location to another. A vehicle is used to transport people – in common parlance. In order to effectuate the purpose of the "mooning" under these facts, it was necessary to use this vehicle to allow the persons in the van approaching at a rate of speed to see the incident. Under all of these specific facts, a reasonable person would construe the vehicle in which Luallen was present to be "in use" at the time of the incident which lead to the injuries sustained. The Progressive insurance policy is clear and unambiguous in this regard, and the court must conclude that under the facts of this case, Luallen was in use of the vehicle. If a jury should conclude that Luallen's

conduct was a proximate cause of the injuries and damages sustained, there is coverage under the insurance policy, subject to the exclusion discussed below.

### C. The Criminal Acts Exclusion

As discussed above, the insurance policy at issue in this case includes a "criminal acts" exclusion. An insurance company is free to limit the coverage provided in a particular policy; however, all exceptions, limitations, and exclusions must be plainly expressed. *Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.,* 618 N.E.2d 31, 33 (Ind. Ct. App. 1993). An insurer may impose such limitations or exclusions on coverage so long as they are not inconsistent with public policy. *See Balagtas v. Bishop,* 910 N.E.2d 789, 795 (Ind. Ct. App. 2009). Furthermore "[a]n exclusionary clause must clearly and unmistakably express the particular act or omission that will bring the exclusion into play." *Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind. Ct. App. 2004).

Here, defendant K.S. argues that the criminal acts exclusion violates public policy. However, defendant K.S. has failed to bring the court's attention to any Indiana cases that have found that a criminal acts exclusion in an automobile insurance policy is against the public policy of the State of Indiana. On a prior occasion, when dealing with a criminal acts exclusion, U.S. District Judge Larry J. McKinney determined that the lack of any pronouncement from Indiana courts that a criminal acts exclusion violated public policy lead to a determination that such an exclusion does not violate public policy. *See Allstate Ins. Co. v. Norris,* 795 F.Supp. 272, 276 (S.D. Ind. 1992). Because consistency in application of

areas of uncertainty in the law is important at a trial court level, this decision should stay in conformity with Judge McKinney's prior decision.  Given the lack of any Indiana cases invalidating a criminal acts exclusion on public policy grounds, the court concludes that the exclusion found in this automobile insurance policy at issue is not invalid because it contravenes public policy.[6]

However, simply because the criminal acts exclusion is valid does not necessarily mean that it bars coverage under the facts presented in this case. Progressive argues that Luallen's actions of "mooning" qualified as a criminal act for the purposes of the insurance policy.  Section 35-45-4-1.5 of the Indiana Code does make public nudity a crime.  Specifically, that statute explains that "[a] person who knowingly or intentionally appears in a public place in a state of nudity commits public nudity, a Class C misdemeanor."  Furthermore, "nudity" is defined as follows:  "the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state."  Ind. Code §

---

[6] The court expresses concern that the language, as written, excludes coverage for all criminal conduct except traffic violations.  This language is extremely broad. Most tortious conduct can be easily categorized as a form of crime as well.  However, the decision to void this exclusion as a matter of public policy because it is "overbroad" is best left to an appropriate state regulatory agency or the Indiana Supreme Court. The federal district court is not the appropriate place to declare what the Indiana law should be.

35-45-4-1.4. In this case, Luallen did intentionally display his buttocks. When he did so, he was inside a vehicle traveling down a public highway. The question which remains then to determine if Luallen committed a crime is whether he was "appearing in a public place" when he did so. Case law under the Indiana statutes has concluded that an individual riding in a semi-truck on a public highway in the nude was a person who was present in a "public place" for purposes of the statute. *Whatley v. Indiana,* 708 N.E.2d 66 (Ind. Ct. App. 1999). Therefore, undisputed facts establish that Luallen did commit the crime of "public nudity," even though he was never charged or convicted of that offense.

Recall that for an exclusion to be valid it must "clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play, and any doubts as to the coverage shall be construed against the contract drafter." *Erie,* 674 N.E.2d at 1041. The fact that Luallen was not charged or convicted of a crime suggests that the local prosecuting attorney has some doubt as to whether the tragic results of this action were the type of damage which could "reasonably be expected to result from" Luallen's criminal conduct. However, Progressive's policy does exclude coverage for criminal conduct that *actually* causes harm. If a jury in the underlying case determines that Luallen's criminal conduct *actually* caused this harm, then the exclusion applies. If his acts did not cause the harm, then, of course, he is not liable at all. The criminal acts exclusion found in this policy does clearly and unmistakably

bring within its scope the particular acts of "mooning" in this case. Defendants K.S. and T.H. will not be entitled to recover under this policy if the "mooning" incident is found to have proximately caused the accident in which they were injured.

**V.     Conclusion**

For the reasons outlined above, the Cross Motions for Summary Judgment are **GRANTED, in part,** and **DENIED, in part.** Luallen's actions constituted a "use" of an automobile, and the policy does provide coverage. Consequently, plaintiff's Motion for Summary Judgment is **DENIED** with respect to this issue. However, the criminal acts exclusion in the insurance policy does not violate public policy and must be applied. Plaintiff's Motion for Summary Judgment is, therefore, **GRANTED** with respect to this issue and defendant K.S.'s Cross Motion for Summary Judgment is **DENIED**. As applied here, if Luallen's actions are found by the jury to have actually caused the harm to the victims, the criminal acts exclusion will preclude coverage. Finally, whether or not Luallen's actions were the proximate cause of defendants K.S. and T.H.'s injuries is disputed and must be determined in the underlying suit, and that issue is not able to be resolved in this case.

A **TELEPHONIC STATUS CONFERENCE** is set for **WEDNESDAY, AUGUST 18, 2010,** at 9:30 a.m., New Albany time (EDT), before the Magistrate Judge. Each

counsel wishing to participate in this conference shall individually place a call to (812) 434-6403 at the time of the conference.[7]

**IT IS SO ORDERED.**

**Dated:** August 2, 2010

                                                William G. Hussmann, Jr.
                                                United States Magistrate Judge
                                                Southern District of Indiana

**Electronic copies to:**

William J. Beggs
BUNGER & ROBERTSON
wjbeggs@lawbr.com

Gary J. Clendening
MALLOR CLENDENING GRODNER & BOHRER
gjclende@mcgb.com

Linda Ann Hammel
YARLING & ROBINSON
lhammel@yarling.com

Belinda R. Johnson-Hurtado
MALLOR CLENDENING GRODNER & BOHRER LLP
bjhurtado@mcgb.com

Matthew Charles Robinson
YARLING & ROBINSON
mrobinson@yarling.com

---

[7]This is the court's bridge line. The first person to call the number will hear a tone and then dead air. As each additional person calls the number, they will hear a tone and then will be able to talk to all other persons who have previously connected to the conference call.